UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
  MIGUEL RAMIREZ,                                           :
                                                            :
                                         Petitioner,        :
                                                            :
                                                            :
                       -v-                                  :
                                                            :
                                                            :
  UNITED STATES,                                            :
                                                            :
                                        Respondent.         :
                                                            :
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/21/2023
```

1:22-cv-6981-GHW
1:17-cr-290-GHW

MEMORANDUM OPINION AND
ORDER

GREGORY H. WOODS, United States District Judge:

Petitioner Miguel Ramirez was a member of a conspiracy that sold substantial volumes of illegal narcotics in the Hunts Point area of the Bronx.  Mr. Ramirez pleaded guilty to the offense of conspiracy to distribute and possess with the intent to distribute crack cocaine and heroin.  On August 26, 2019, the Court sentenced him principally to 218 months of imprisonment to be followed by a five-year period of supervised release.  The Court entered judgment the same day.  While Mr. Ramirez initially appealed his sentence, he later withdrew his direct appeal.  On August 4, 2022, Mr. Ramirez filed this petition for the issuance of a writ of habeas corpus under 28 U.S.C. § 2255.  Because Mr. Ramirez's petition is untimely and he has not provided a sufficient basis for the Court to toll the statute of limitations, the petition is DENIED.

## I.  BACKGROUND[1]

### A.  FACTS

Mr. Ramirez was one of twenty-five defendants indicted in connection with a broad conspiracy to distribute illegal narcotics in the Hunts Point area of the Bronx.  Dkt. No. 483 (Presentence Investigation Report, or "PSR") ¶¶ 10–11.  Mr. Ramirez was one of the leaders of the drug trafficking organizations; he used violence and threats of violence to maintain leadership of the organization.  *Id.* ¶ 12.  Mr. Ramirez was initially charged with three counts related to his alleged activities.  Count One charged Mr. Ramirez with conspiring with others to distribute and possess (i) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack," and (ii) one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of 21 U.S.C. § 846.  *Id.* ¶ 2.  Count Two charged Mr. Ramirez with using and carrying firearms in furtherance of Count One, and aiding and abetting in the use, carrying, and possession of such firearms between approximately 2014 and approximately May 2017, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2.  *Id.* ¶ 3.  And Count Three charged Mr. Ramirez as a felon in possession of ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 2.  *Id.* ¶ 4.

Mr. Ramirez entered into a plea agreement.  In his plea agreement, Mr. Ramirez agreed to plead guilty to Count One of the indictment.  *Id.* ¶ 6.  Mr. Ramirez also agreed to a two-level enhancement under the sentencing guidelines because he possessed a firearm in connection with the offense, and another two-level enhancement because he used, made a threat of, or directed the use of violence in connection with the offense.  *Id.* ¶¶ 7(c)–(d).  Finally, Mr. Ramirez accepted responsibility as an organizer and leader of the offense, resulting in a further four-level

---

[1] Throughout this opinion, citations to the docket are to Mr. Ramirez's criminal case, 1:17-cr-290-GHW-3, unless otherwise noted.

enhancement. *Id.* ¶ 7(e). On October 22, 2018, the Court accepted Mr. Ramirez's guilty plea. *Id.* ¶ 6; *see* Dkt. No. 678-3 (transcript of conference).

At sentencing, the Court calculated the advisory sentencing guidelines range in a manner consistent with the calculation agreed to by Mr. Ramirez in his plea agreement. Dkt. No. 678-4 ("Sentencing Tr.") at 6:7–8:8. Consistent with the plea agreement and the pre-sentence report, the Court's calculation of the advisory sentencing guidelines range included three separate enhancements and two reductions. *Id.* With the two-level enhancement for possession of a firearm, the two-level enhancement for use of violence, the four-level enhancement for being an organizer, and an aggregate three-level reduction due to Mr. Ramirez's timely acceptance of responsibility, the Court calculated the offense level as thirty-five. *Id.* Mr. Ramirez had a substantial criminal history, placing him in criminal history category V. *Id.* Consequently, the Court determined that the advisory sentencing guidelines range for Mr. Ramirez's offense was 262 to 327 months imprisonment. *Id.* at 8:6–8:8. Mr. Ramirez's counsel did not object to the Court's calculation of the guidelines range, which was consistent with the guidelines range agreed to by Mr. Ramirez in the plea agreement. *See* Dkt. No. 678-3 at 22:19–23:2.

The Court noted at sentencing that the offense to which Mr. Ramirez pleaded guilty

[was] a very serious offense. Mr. Ramirez was a leader of an organization whose members conspired to sell crack cocaine, in his case, crack cocaine and heroin. Mr. Ramirez handled all aspects of the drug business, including, among other things, obtaining supply, arranging for the preparation of drugs for resale, including the cooking of crack, handling the finances of his organization, negotiating disputes between workers and demanding payments from them, and handling customer requests for drugs. . . . Mr. Ramirez used violence and intimidation to maintain control of his drug trafficking network. He directed others to use violence. He possessed firearms that were used to protect the drug business.

Sentencing Tr. at 29:17–30:20. Despite the serious nature of Mr. Ramirez's offense and his lengthy criminal history, after considering all of the relevant sentencing factors under 18 U.S.C. § 3553(a), the Court ultimately imposed a sentence of 218 months imprisonment, varying downward from the

advisory guidelines range by forty-four months; the Court also imposed five years of supervised release. *Id.* at 42:13–20.

The Court entered judgment on August 26, 2019. Dkt. No. 580 at 1. While Mr. Ramirez initially appealed the judgment, *see* Dkt. No. 581, he withdrew that appeal on January 15, 2020. Dkt. No. 588.

**B. Procedural History**

Mr. Ramirez commenced this action by filing a petition with the Court *pro se*, which he labels a motion to vacate under 28 U.S.C. § 2255. Dkt. No. 671 (the "Petition") at 1. While the Petition was docketed on August 16, 2022, it was dated August 4, 2022, and contains a certification by Mr. Ramirez that it was placed in the prison mail on that date. *Id.* at 14. As a result, the Court uses August 4, 2022 as the date of the Petition's filing.

In the Petition, Mr. Ramirez does not contend that he is innocent of the underlying charge to which he pleaded guilty. Instead, he claims that his counsel at both the trial and appellate levels were ineffective. Starting with his trial counsel, Mr. Ramirez argues that his counsel improperly failed to challenge the two-level enhancement to his sentence for firearm possession, because there was "absolutely no evidence suggesting the Ramirez possessed this weapon[,] nor any other weapon, during the offense." Petition at 4. Mr. Ramirez also argues that his counsel was ineffective because he or she failed to challenge the two-level enhancement to his sentence for violence, which was based on a threat made to his biological sister and a physical altercation with a friend that—in Mr. Ramirez's view—did not relate to the underlying offense. *Id.* at 10.

Mr. Ramirez also claims that he had ineffective assistance of appellate counsel. *Id.* at 9. He argues that he "sought to challenge his sentence on direct appeal" but that despite his eagerness to address his "unlawful" sentence, the appellate counsel "mentioned to him that he didn't find any

errors." *Id.*  Mr. Ramirez believes that not filing a brief to appeal the sentence was "not strategic and fell below [what was] reasonable."  *Id.* at 8.

Finally, recognizing that his Petition was not timely filed, Mr. Ramirez argues that he is entitled to equitable tolling of the statute of limitations for filing a petition for collateral relief under 28 U.S.C. § 2255.  Petition at 6.  He requests an "opportunity to appeal his sentence" and "that his sentence be corrected."  *Id.* at 14.

On August 25, 2022, the Court directed the United States to file an opposition to the Petition, Dkt. No. 672, which it did on October 21, 2022.  Dkt. No. 678 (the "Opposition").  In the Opposition, the Government contests Mr. Ramirez's petition on several substantive grounds, including by arguing that Mr. Ramirez's counsel was not ineffective for failing to contest enhancements to which Mr. Ramirez agreed in his plea agreement, and that the facts in the record— including statements made by Mr. Ramirez under oath—amply supported the findings concerning use of violence and possession of a firearm.  Opposition at 16–20.  The Government also contends that, because Mr. Ramirez's plea agreement waived his right to a collateral challenge if a sentence fell within or below the agreed-upon sentencing guidelines range, Mr. Ramirez has waived his right to bring this petition.  *Id.* at 16.  And the Government notes that Mr. Ramirez's Petition was not timely filed and argues that he is not entitled to equitable tolling.  *Id.* at 21–26.

After the Government filed its Opposition, the Court issued an order reminding Mr. Ramirez that he had thirty days from the date of service of the Opposition to file a reply.  Dkt. No. 682.  Because Mr. Ramirez never filed a reply or requested an extension of time to file a reply, the Court considers the motion fully briefed as of November 21, 2022—thirty days from the date on which Mr. Ramirez was served with the Government's Opposition.  *See id.*

## II.  DISCUSSION[2]

### A.  Mr. Ramirez's Petition is Time Barred

Mr. Ramirez's habeas petition is barred by the one-year statute of limitations applicable to

petitions for collateral relief under 28 U.S.C. § 2255(f).  The Anti-Terrorism and Effective Death

Penalty Act of 1996 ("AEDPA") "imposes a one-year statute of limitations on motions to set aside

sentences imposed, *inter alia*, 'in violation of the Constitution or laws of the United States.'"  *United*

*States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (citing 28 U.S.C. § 2255(a), (f)), *cert. denied*, 140 S. Ct.

1234 (2020).  The one-year statute of limitations runs from the latest of a number of "triggering

events" enumerated in the statute.  *Rivas v. Fischer*, 687 F.3d 514, 533 (2d Cir. 2012).  One applicable

"triggering event" under § 2255(f) is "the date on which the judgment of conviction [became] final."

28 U.S.C. § 2255(f)(1).  "[A]n unappealed federal criminal judgment becomes final when the time for

filing a direct appeal expires." *Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005).  Unless the

Government files an appeal, the window for a defendant to file a notice of appeal of a conviction

closes fourteen days after the district court enters judgment.  Fed. R. App. P. 4(b)(1)(A)(i).

Here, the application of that rule could lead to two baselines from which the statute of

limitations could run.  As discussed, Mr. Ramirez initially filed a direct appeal of his sentence within

the applicable fourteen-day window.  Dkt. No. 581.  But he withdrew that appeal on January 15,

2020.  Dkt. No. 588.  The Government's view is that Mr. Ramirez's appeal should not be considered

in calculating the proper date from which to run the statute of limitations because the appeal was

later withdrawn, and that the statute of limitations should accordingly run from fourteen days after

the entry of judgment—September 9, 2019.  Opposition at 22.  But its cited case in support of that

---

[2] Because Mr. Ramirez is proceeding *pro se*, his submission is "construed liberally and interpreted 'to raise the strongest arguments that [it] suggest[s].'"  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

proposition did not involve a situation where, as here, a defendant filed a notice of appeal within the applicable fourteen-day window but later withdrew it. *See United States v. Wright*, 945 F.3d 677, 683 (2d Cir. 2019) (noting the standard rule for tolling when no appeal is filed within fourteen days of the entry of judgment). Nor is the Court independently aware of any case addressing the precise issue here. At a fundamental level, it is somewhat hard to understand how the case could have been final during the time that Mr. Ramirez was appealing it, as the act of appeal typically operates to prevent finality. *See, e.g.*, *Moshier*, 402 F.3d at 118 (tying finality to the expiration of the time for direct appeal).[3] And if the judgment did not become final until Mr. Ramirez chose to withdraw his appeal, then it became final on that date—January 15, 2020.

Ultimately, the Court need not resolve which date properly represents the date on which the judgment became final because Mr. Ramirez's Petition was untimely using either baseline. Depending on the date used, the one-year statute of limitations expired either on September 9, 2020 or January 15, 2021. And Mr. Ramirez did not request relief from his conviction until August 4, 2022—over a year-and-a-half after even the later possible expiration of the statute of limitations. As a result, the Petition is not timely.

**B. There is no Basis to Toll the Statute of Limitations**

Mr. Ramirez has not presented a sufficient basis upon which the Court can conclude that equitable tolling of the statute of limitations is appropriate. "The Supreme Court has confirmed that AEDPA's statute of limitations is not jurisdictional and 'does not set forth an "inflexible rule" requiring dismissal whenever its clock has run.'" *Rivas*, 687 F.3d at 537 (quoting *Holland v. Florida*,

---

[3] There is another issue with treating September 9, 2019 as the date from which the statute of limitations runs. Namely, part of Mr. Ramirez's appeal is ineffective assistance of *appellate* counsel, tied to the purported advice he received and alleged actions taken by his counsel during the period before Mr. Ramirez withdrew his appeal. Petition at 9. Treating September 9, 2019 as the relevant date for the statute of limitations thus could run afoul of 28 U.S.C. § 2255(f)(4)'s rule that the one-year period of limitation can run based on "the date on which the facts supporting the claim or claims presented could have been discovered" if that date is later than other dates provided for in § 2255(f). It stands to reason that Mr. Ramirez could not have known about the alleged problems with appellate counsel until they arose—which occurred after September 9, 2019.

560 U.S. 631, 645 (2010)).  "This is because although AEDPA seeks to eliminate delays in the federal habeas review process, it does not do so at the expense of basic habeas corpus principles, or prior law that a petition's timeliness has always been determined under equitable principles."  *Wright*, 945 F.3d at 684 (quotations and brackets omitted) (citing *Holland*, 560 U.S. at 649–50).  "As a result, even in the wake of AEDPA, a petitioner is entitled to equitable tolling of the one-year statute of limitations if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *Id.* (quoting *Holland,* 560 U.S. at 649).

"To warrant equitable tolling, 'the circumstances of a case must be 'extraordinary.'"  *Id.* (quoting *Holland,* 560 U.S. at 652).  "When determining what constitutes 'extraordinary' circumstances, . . . 'the proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period.'"  *Id.*

"Even when extraordinary circumstances exist, however, a petitioner must demonstrate diligence to qualify for equitable tolling."  *Id.* at 685.  "The only diligence required for the application of equitable tolling is 'reasonable diligence'—we do not require 'maximum feasible diligence.'  Even so, 'we expect even *pro se* petitioners to know when the limitations period expires and to understand the need to file a habeas motion within that limitations period.'"  *Id.* (first quoting *Holland*, 560 U.S. at 653, then quoting *Doe v. Menefee*, 391 F.3d 147, 177 (2d Cir. 2004)).

Mr. Ramirez argues that he is entitled to equitable tolling because he was "on lockdown" in prison "due to COVID" for "the entire year of 2020," and during that time was "not availed of the law library."  Petition at 6.  He also states that on July 9, 2021, he was "sent to the SHU," and was transferred to a different institution in October of that year.  *Id.*

At a fundamental level, even if the Court were to assume that all of the circumstances that Mr. Ramirez outlines were "extraordinary," his argument fails because it fails "to demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). Mr. Ramirez states that he was "on lockdown" during "the entire year of 2020." Petition at 6. But the COVID-19 pandemic was not widely recognized in the United States until mid-March of that year. *See* Opposition at 24. COVID-related lockdowns thus account for, at most, nine-and-a-half months of delay in Mr. Ramirez's filing. And the time between when Mr. Ramirez states he was "sent to the SHU" in July 2021 and his later transfer to a different institution in October of that year accounts for an additional four months of delay. That means that Mr. Ramirez has identified barriers that delayed his filing of the Petition by a total of thirteen-and-a-half months. But as previously described, even using the latest date on which the statute-of-limitations could start running under 28 U.S.C. § 2255(f), Mr. Ramirez missed the applicable filing deadline by over eighteen months. So taking Mr. Ramirez's arguments on their strongest possible terms, he has not provided sufficient facts to show that his delay in filing was tied to "extraordinary circumstance[s] [that] stood in his way and prevented timely filing." *Wright*, 945 F.3d at 684; *see also Harper v. Ercole*, 648 F.3d 132, 142 (2d Cir. 2011) ("[The Second Circuit's] causation precedents ensure that equitable tolling is granted only when the extraordinary circumstances are responsible for a filing delay.").

That failure to connect his late filing to extraordinary events is reason alone to deny equitable tolling. But Mr. Ramirez has also failed to make any argument about his diligence during the periods in which he was not prevented from filing by extraordinary events. At least one fact independently known to the Court, moreover, indicates a lack of diligence. Specifically, Mr. Ramirez filed a motion for compassionate release on October 6, 2021, roughly ten months before filing this motion. Dkt. No. 660. It is hard to understand why Mr. Ramirez could not have filed this

"petition—even a bare-bones one—and then asked for additional time to supplement it" at the time that he filed his motion for compassionate release. *Hines v. United States*, No. 20-cv-10064, 2021 WL 2456679, at *2 (S.D.N.Y. June 16, 2021). Having provided no facts about his diligence in his Petition, and having failed to reply to the Government's Opposition, Mr. Ramirez has not provided any basis from which this Court could find that he pursued his rights diligently during the time that he seeks to have tolled. Lacking that, and lacking adequate causation between extraordinary events and his failure to timely file, the Court has no basis to toll the limitations period.

### C. **The "Savings Clause" of 28 U.S.C. § 2255(e) Does Not Apply**

The "savings clause" of § 2255(e) "allows a prisoner to avoid the gatekeeping provisions of section 2255 . . . if section 2255 'appears . . . inadequate or ineffective to test the legality of his detention.'" *Love v. Menifee*, 333 F.3d 69, 73 (2d Cir. 2003) (quoting 28 U.S.C. § 2255(e)). The savings clause authorizes a petition under § 2241 "only when § 2255 is unavailable *and* the petition is filed by an individual who (1) 'can prove actual innocence on the existing record,' and (2) 'could not have effectively raised [his] claim[ ] of innocence at an earlier time.'" *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019) (alterations in original) (internal quotation marks omitted) (quoting *Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003)).

Mr. Ramirez does not contend that he is actually innocent. He argues only that the sentence imposed should be reduced because of his counsel's failure to object to sentencing enhancements—to which he agreed—that increased his offense level by a total of four levels. Therefore, the "savings clause" of 28 U.S.C. § 2255(e) is unavailable to him.[4]

---

[4] Because Mr. Ramirez's Petition is time-barred, there are no grounds for equitable tolling, and § 2255(e)'s "savings clause" does not apply, the Court need not consider the other arguments raised by the Government in its Opposition.

### III.  CONCLUSION

Because the Petition was not timely filed, and equitable tolling of the statute of limitations is not warranted, the Petition is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  Mr. Ramirez has not made a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 671 in Case No. 1:17-cr-290-GHW.  The Clerk of Court is also directed to terminate all outstanding motions in *Miguel Ramriez v. United States,* Case No. 1:22-cv-6981-GHW, to enter judgment for the United States in that case, and to close that case.  The Clerk of Court is directed to mail a copy of this order to Petitioner and note service on the docket.

SO ORDERED.

Dated:  July 21, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge

11